**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION**

ADRIAN REED,

    Plaintiff,

v.                                                              Case No. 9:24-cv-81482-RLR

BRIDGECREST CREDIT COMPANY, LLC; TRANS UNION, LLC; EXPERIAN INFORMATION SOLUTIONS, INC.; and EQUIFAX INFORMATION SERVICES, INC.

    Defendants.

_____/

## DEFENDANT BRIDGECREST CREDIT COMPANY, LLC'S MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION AND INCORPORATED MEMORANDUM OF LAW

Defendant, Bridgecrest Credit Company, LLC (hereinafter "Bridgecrest"), by and through its undersigned counsel and in accordance with the applicable Federal Rules of Civil Procedure, as well as the Federal Arbitration Act, 9 U.S.C. §§ 1, *et seq*. (hereinafter "FAA"), hereby files this, its Motion to Stay Proceedings and Compel Arbitration, and in support thereof, states as follows:

### INTRODUCTION

Plaintiff, Adrian Reed (hereinafter "Plaintiff"), alleges that he purchased a vehicle from Carvana, LLC (hereinafter "Carvana") in November 2022, by executing, among other things, a retail installment contract and security agreement (hereinafter "Contract"). The servicing of the Contract was subsequently assigned to Bridgecrest. Plaintiff's purchase was subject to a 7-Day Money Back Guarantee, during which time Plaintiff was able to return the purchased vehicle for any reason whatsoever; however, Plaintiff did not return the vehicle within this timeframe. After the seven-day period expired, Plaintiff attempted to improperly rescind his transaction. In doing

so, Plaintiff refused to make any payments on the purchased vehicle. Notably, Plaintiff's failure to make the required payments resulted in the vehicle's repossession and negative credit reporting. Thus, Plaintiff alleges that Bridgecrest violated the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA") as well as the Florida Consumer Collection Practices Act, Fla. Stat. § 559.72(9) ("FCCPA").

Regardless of the validity of Plaintiff's claims, as part of the transaction for the vehicle, Plaintiff signed an arbitration agreement ("Arbitration Agreement"). The claims alleged in Plaintiff's First Amended Complaint arise from, or relate to, Plaintiff's purchase of the vehicle. As such, these claims are subject to binding arbitration pursuant to the terms of the Arbitration Agreement entered into between Plaintiff and Carvana. The Arbitration Agreement is also applicable to Bridgecrest based on the clear language of the Arbitration Agreement. Accordingly, Bridgecrets is entitled to an order staying these proceedings and compelling arbitration of all claims alleged in the First Amended Complaint pursuant to the FAA and the terms of the Arbitration Agreement. *See* 9 U.S.C. § 3.

## MATERIAL FACTS[1]

1. On or about November 28, 2022, Plaintiff purchased a used 2016 Maserati Ghibli Sedan bearing vehicle identification number ZAM57XSA1G1183019 (hereinafter "Vehicle") from Carvana. As part of this transaction, Plaintiff executed and entered into the Contract and the Arbitration Agreement. *See* **Composite Exhibit A**.

2. Plaintiff signed the Arbitration Agreement and the Contract contemporaneously as part of the same package of documents.

---

[1] The material facts are supported by Bridgecrest's Declaration filed contemporaneously with this Motion.

3. In pertinent part, the Arbitration Agreement states: "you and we are both promising to accept arbitration for a wide range of our disputes" and "[i]f either you or we decide that the dispute should be resolved by arbitration, then the Arbitration Agreement obligates both of us to accept arbitration." Arbitration Agreement, p. 1.

4. The term "we" is defined in the Arbitration Agreement as:

> Carvana, LLC, any purchaser, assignee, or loan servicer of the Contracts, including, but not limited to, Bridgecrest Acceptance Corporation, **Bridgecrest Credit Company, LLC**, and the parent companies, subsidiaries, affiliates, predecessors, successors, officers, directors, and employees of any of them.

Arbitration Agreement at ¶ 1.5 (emphasis added).

5. Moreover, the term "you" is defined as "[Plaintiff,] any of [Plaintiff's] heirs or personal representatives, and any other person acting on [Plaintiff's] behalf." Arbitration Agreement at ¶ 1.7.

6. The Arbitration Agreement goes on to define the types of "Claims" that Plaintiff agreed to submit to binding arbitration. The term "Claim" is broadly defined as follows:

> "Claims" has the broadest reasonable meaning, and means any claims, counterclaims, crossclaims, third-party claims, disputes, or controversies between [Plaintiff] and us, whether on an individual or a class basis, whether arising in contract, tort, equity, pursuant to statute, regulation, ordinance, or otherwise, relating to or arising from any of the following:
>
> (a) the Vehicle, its features, mileage, condition, or accident history;
> (b) advertisements, promotions, or oral written statements regarding the Vehicle or the Contracts;
> (c) registration of, title to, or liens on the Vehicle;
> (d) delivery or pick-up of the Vehicle;
> (e) your purchase, sale, or trade-in of the Vehicle;
> (f) the Contracts, and duties or relationship arising therefrom;
> (g) financing terms, credit applications, or credit reporting;
> (h) origination or servicing of the Contracts;
> (i) any goods and services incidental to the Contracts or the Vehicle, such as warranty service, extended vehicle service, or insurance coverage;
> (j) the collection of amounts owed by [Plaintiff,] or the repossession of the Vehicle;

3

      (k)  the rescission or termination of the Contracts; or
      (l)  the collection or disclosure of [Plaintiff's] personal information.

Arbitration Agreement at ¶ 1.2.

7. Pursuant to the terms of the Arbitration Agreement, the parties also agreed that the transaction involved "interstate commerce," and would therefore be governed by the FAA. Arbitration Agreement at ¶ 15.

8. Plaintiff had the option to reject the Arbitration Agreement within 30 days of his execution of it, but Plaintiff did not do so. Arbitration Agreement, p. 1.

9. Shortly after Carvana sold the Vehicle to Plaintiff, Bridgecrest became the servicer of Plaintiff's Contract. Accordingly, Bridgecrest is entitled to enforce the Arbitration Agreement because it is the servicer of the Contract.

10. As a result of Plaintiff's failure to make any payments on his account, on or about April 30, 2023, Plaintiff's account was charged off.

11. Subsequently, the Vehicle was involuntarily repossessed and sold at an auction.

12. On or about November 27, 2024, Plaintiff filed his First Amended Complaint against Bridgecrest alleging that Bridgecrest violated the FCRA by "failing to fully and properly investigate Plaintiff's disputes when it failed to review all relevant information provided by the credit reporting agencies." Plaintiff also alleges that Bridgecrest violated the FCCPA by attempting "to enforce a debt when Bridgecrest knew that the debt was not legitimate." (Amend. Compl., DE 5 at ¶¶ 136 and 144).

13. Plaintiff's claims arise from, or relate to, the Vehicle, the Contract between the parties, credit reporting, servicing of the Contract, and repossession of the Vehicle. As a result, the claims alleged by Plaintiff fall within several categories of "Claims" under the Arbitration Agreement and, thus, must be arbitrated pursuant to the parties' Arbitration Agreement.

**MEMORANDUM OF LAW**

The FAA applies to any "written provision in any… contract evidencing a transaction involving commerce." 9 U.S.C. § 2. Section Two of the FAA further provides that "a written arbitration provision… shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or equity for the revocation of any contract." *Id*. Section Three of the FAA states that, if a lawsuit in federal court has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration," the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement." 9 U.S.C. § 3. Accordingly, the FAA mandates that "a district court must compel arbitration and stay the underlying action if the parties had an earlier agreement to arbitrate their dispute." *Losapio v. Comcast Corp.*, No. 1:10-CV-3438-RWS, 2011 WL 1497652, at *2 (N.D. Ga. April 19, 2011) (*citing* 9 U.S.C. § 3), *aff'd* 251 Fed. Appx. 602 (11th Cir. 2007) (per curium); *see also Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the [FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed").

There is a strong federal policy under the FAA favoring enforcement of agreements to arbitrate disputes, such as the Arbitration Agreement at issue here. *E.g., AT&T Mobility LLC v. Conception*, 563 U.S. 333, 339 (2011). The Court must keep this policy in mind when considering whether to compel arbitration. The FAA "establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issue should be resolved in favor of arbitration." *Dow v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1213 (11th Cir. 2011).

Typically, courts consider three elements under the FAA when ruling on a motion to compel arbitration: "(1) whether a valid written agreement to arbitrate exists; (2) whether an arbitrable issue exists; and (3) whether the right to arbitration was waived." *Celestin v. Se. Traffic Supply, LLC*, No. 23-61024-CIV-MARTINEZ, 2024 U.S. Dist. LEXIS 17500, at *5 (S.D. Fla. Jan. 30, 2024) (compelling arbitration where the Court found that all three elements were satisfied). This Court must compel the arbitration of this matter because (1) there is a valid written arbitration agreement between the parties, (2) there is an arbitrable issue, and (3) Bridgecrest has not waived its right to arbitration.

As to the first element, the Arbitration Agreement reflects that Plaintiff entered into a "valid written agreement to arbitrate" and that such agreement would bind Bridgecrest and Plaintiff to resolve "Claims" through binding arbitration. As explained above, the claims raised by Plaintiff clearly fall within the definition of "Claim" under the Arbitration Agreement.

As to the second element, the parties have an arbitrable issue due to the broad definition of "Claim" under the Arbitration Agreement. *E.g., Goldstein v. N. Palm Hyundai, LLC*., No. 23-CV-80190-RLR, 2023 U.S. Dist. LEXIS 236857, at *7 (S.D. Fla. May 23, 2023) (finding arbitrable issue where the arbitration provision's broad language covered "any claim or dispute" that "arises out of or relates to" the contract). The claims alleged in the First Amended Complaint arise from or relate to the Contract, the relationships that resulted from the Contract, the servicing of the Contract, and credit reporting. Thus, these claims fall squarely within the scope of "Claims" that must be submitted to binding arbitration pursuant to the Arbitration Agreement. *See AT&T Tech., Inc. v. Communications Workers of America*, 475 U.S. 643, 650-51 (1986) (recognizing that "there is a presumption of arbitrability…" and that any "[d]oubts should be resolved in favor of coverage").

Moreover, the fact that the claims alleged in the First Amended Complaint are statutory in nature is of no consequence. Courts routinely compel arbitration of statutory claims, including claims under the FCRA and FCCPA. *Obremski v. Springfield Financial Services, Inc.*, 2012 WL 3264521 (M.D. Fla. Aug. 10, 2012) (compelling arbitration of FCCPA and FCRA claims); *Owings v. T-Mobile USA, Inc.*, 978 F.Supp.2d 1215 (M.D. Fla. 2013) (compelling arbitration of claims arising under the FCCPA and Telephone Consumer Protection Act); *Jones v. Sallie Mae, Inc.*, No. 3:13-cv-837-J-99MMH-MCR, 2013 WL 6283483 (M.D. Fla. Dec. 4, 2013) (compelling arbitration of FCCPA claims); *Bolanos v. First Investors Servicing Corp.*, No. 10-23365-CIV, 2010 WL 4457347 (S.D. Fla. 2010) (compelling arbitration of FDCPA claims); *Reeves v. Ace Cash Express, Inc.*, 937 So.2d 1136 (Fla. 2d DCA 2006) (finding that the Florida legislature did not "intend to preclude the submission of FCCPA claims to arbitration and that consequently, such claims are not, as a matter of law, excluded from arbitration"). Based on the policy favoring the arbitration of claims and broad interpretation of the Arbitration Agreement, the parties have an arbitrable issue and, thus, satisfy the second element.

As to the third element, Bridgecrest has not waived its right to arbitrate. Bridgecrest is raising its right to compel arbitration at the outset of this dispute and has not taken any action that is inconsistent with using arbitration as the forum for resolving this dispute.

Based on the foregoing, Bridgecrest has established that there is an arbitration agreement in place that would cover the disputes alleged by Plaintiff. The declaration also establishes that Bridgecrest has the right to enforce the Arbitration Agreement and that the First Amended Complaint contains "Claims" as defined by the Arbitration Agreement. Moreover, Bridgecrest has not waived its right to arbitrate. Based on the foregoing, and pursuant to the FAA, Bridgecrest is

entitled to an order staying these proceedings and compelling arbitration of all disputes between the parties.

WHEREFORE, Bridgecrest respectfully requests that this Court enter an order granting this motion, staying these proceedings, compelling arbitration of all claims and disputes between the parties as provided for by the Arbitration Agreement, and granting Bridgecrest such other relief as the Court deems just and proper.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 23, 2024, this document was electronically filed with this Court using CM/ECF System which electronically serves the following:

> Kevin Rajabalee, Esq.
> Sharmin & Sharmin, P.A.
> 830 N Federal Hwy
> Lake Worth, FL 33460
> kevin@sharminlaw.com

>> *s/Robert E. Sickles, Esq.*
>> Robert E. Sickles, Esq.
>> Florida Bar No. 167444
>> robert.sickles@dinsmore.com
>> Egle Vinickaite, Esq.
>> Florida Bar No. 1039550
>> Egle.vinickaite@dinsmore.com
>> DINSMORE & SHOHL LLP
>> 201 North Franklin Street, Suite 3050
>> Tampa, FL 33602
>> Phone: (813) 543-9848
>> *Counsel for Defendant Bridgecrest Credit Company, LLC*